United States District Court
Southern District of Texas
**ENTERED**
January 05, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| v. | § | **CRIMINAL NO. 6:17-92-2** |
| | § | **CIVIL NO. 6-21-27** |
| **MOHAMED EBRAHIM SALIM MOTON,** | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION & ORDER**

Defendant/Movant Mohamed Ebrahim Salim Moton has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 141. Now pending is the United States of America's (the "Government") Motion for Summary Judgment (D.E. 152), to which Movant has not responded.

**I. BACKGROUND[1]**

Movant, a native and citizen of India, came to the United States as a tourist in October 2014, but within two years, he was packaging a synthetic cannabinoid for two men he met at his mosque. In 2016, the Houston Police Department received a tip regarding narcotics activity at a storage facility. Observing a man unloading boxes from a blue minivan into a storage unit flagged by the facility's manager, police followed and stopped him for a traffic violation. Movant was the driver. Police began surveilling Movant, watching him load boxes from the storage unit into his minivan and drive to a gas station a few miles away, where he deposited a box and two black trash bags into a dumpster. After Movant drove off, police recovered the box and trash bags, which contained materials often used to produce synthetic cannabinoids: baggies,

---

1.  The following factual recitation was taken from the Fifth Circuit's opinion in *United States v. Moton*, 951 F.3d 639 (5th Cir. 2020).

1

loose leaves, receipts for acetone, a box for a digital scale, a package for a respirator, bottles of Tasty Puff flavoring, and labels advertising the flavor and potency of the synthetic cannabinoid. The bag's contents tested positive for synthetic cannabinoid.

The police continued to surveil Movant as he regularly visited other storage facilities and a house on Mulholland Drive in southwest Houston (the "House"). Movant was the only person who police saw visiting the House. Movant regularly dropped off trash bags at storage units for pick up by his co-defendant, Ataru Rahman Malik. Officers saw Movant put black trash bags in the trunk of Malik's unattended car and immediately leave. They observed Malik return to his car and transfer the bags to a vehicle driven by another of Movant's co-defendants. Officers conducted a traffic stop of the vehicle, confiscating 800 baggies of synthetic cannabinoids.

Officers arrested Movant at the House. With unfurnished rooms and empty kitchen cabinets, the House was no home. It was a large-scale manufacturing lab: chemical flavoring was stored in a bedroom, containers of acetone were in the garage, and tubs filled with packaged synthetic cannabinoids were in the backroom. Fans blew chemical odors out of the chimney, and a machine was used to seal the packaged drugs. The officers also found approximately 580 pounds of synthetic cannabinoids, as well as Movant's utility bill for the House.

With the help of an Urdu-speaking interpreter, police advised Movant of his rights and interviewed him. Movant then described the process for delivering synthetic cannabinoids to storage units, explaining that he was paid by cash left for him in the units. On searching the units, including one listed in Movant's name, police found materials used to produce synthetic cannabinoids.

Movant testified at trial that he mixed artificial flavoring with dry green leaves, estimating that he had packaged between 75,000 and 200,000 bags. While each contained 10

grams of the dried leaves, he denied knowing that the leaves contained synthetic cannabinoids or that any aspect of the business was illegal, saying that his difficulty with English left him unaware that the business was illegal. At the close of evidence, Movant unsuccessfully moved for a judgment of acquittal. On May 18, 2019, the jury found him guilty of two counts of possession with intent to distribute synthetic cannabinoids and not guilty on the remaining conspiracy charge.

The Presentence Report (PSR) attributed to Movant $107,940.00 in drug proceeds discovered in Malik's safety deposit box and 434,319.50 grams of cannabinoids seized at different locations, totaling 2,593,119.50 grams of synthetic cannabinoid. Using an unstated multiplier, the PSR converted this figure to 409,274 kilograms of marijuana, which has a base offense level of 38. The PSR then added a two-level enhancement under USSG § 2D1.1(b)(12) for maintaining premises for the purpose of manufacturing or distributing a controlled substance analogue. With a total offense level of 40 and a criminal history category of I, the advisory Guidelines range of imprisonment was 292–365 months, with a statutory maximum of 240 months. The Court varied downward and sentenced Movant to 186 months' imprisonment on each count, to be served concurrently and to be followed by 3 years' supervised release on each count, also to be served concurrently.

On appeal, Movant challenged the sufficiency of the evidence to prove he had the requisite *mens rea*, the drug quantity used to calculate his base offense level, and the sentencing enhancement for maintaining a drug premises. The Fifth Circuit Court of Appeals affirmed his conviction and sentence on March 2, 2020, holding that: (1) there was sufficient circumstantial evidence of Movant's knowledge that the substance with which he was dealing was controlled to support his conviction; (2) any error in the PSR's conclusion that 434,319.50 grams of synthetic

3

cannabinoid were seized during the investigation was harmless; (3) any error in the PSR's failure

to explain the multiplier used to convert synthetic cannabinoid to marijuana was harmless; and

(4) the district court did not commit clear error in applying the sentencing enhancement for

maintaining a premises for manufacturing or distributing controlled substance. *United States v.*

*Moton*, 951 F.3d 639 (5th Cir. 2020).

Movant did not petition the Supreme Court for a writ of certiorari, and the judgment

became final on June 1, 2020. *See* FED. R. APP. P. 4(b)(1)(A)(i). He filed the current motion

under 28 U.S.C. § 2255 on May 20, 2021. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant's § 2255 motion raises the following claims:

(1) Ineffective assistance of counsel during the plea-bargaining process;

(2) Ineffective assistance of counsel due to the individual and cumulative effect of multiple deficiencies or errors by counsels during the pretrial, trial, sentencing, and direct appeal process;

(3) The Court failed to meaningfully consider the parsimony principle, 18 U.S.C. § 3553(a), and all the characteristics of Movant and of the offense; and

(4) Ineffective assistance of counsel at sentencing due to counsel's failure to investigate many factors surrounding the case, especially Movant's "misunderstanding of the laws and how and why he continued to assert factual innocence."

In response, the Government argues that all of Movant's claims are either procedurally

defaulted, inadequately plead, contradicted by the record, unsubstantiated, subject to the law-of-

the-case doctrine, or meritless.

## III. 18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set

aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's

jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

## IV. ANALYSIS

### A.  Ineffective Assistance of Counsel Claims

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id*. at 694. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter*, 131 F.3d at 463.

### 1. Counsel's Ineffectiveness During the Plea-Bargaining Process

Ground One alleges that trial counsel was ineffective for failing to advise Movant that he faced a harsher sentence if he was found guilty at trial than if he accepted a plea agreement with the Government. As a result of not pleading guilty, Movant claims he was prejudiced by being subjected to a "trial penalty." D.E. 141, p. 4.

Movant has offered no specific factual allegations or other evidence to support his claim that counsel provided erroneous advice related to Movant's possible sentence after a trial. He also does not allege that he would have pled guilty had he known he could have received a lower sentence under the Guidelines for acceptance of responsibility; to the contrary, he continues to assert his "factual innocence" in Ground Four of his current motion. Movant's failure to state specific facts upon which his claim is based renders his claim conclusory, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (quoting *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989); *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts "is insufficient to state a constitutional claim"). For this reason alone, Movant's ineffective assistance of counsel claim must fail. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (finding conclusory allegations of deficient performance and prejudice are not sufficient to prove claims of ineffective assistance of counsel).

Movant's claim is also belied by defense counsel's statements on the record at sentencing, in which counsel discussed the communications he had with Movant throughout the

6

case. When the Court asked whether Movant was "interested in changing his position from total innocence to possibly trying to benefit from acceptance or something else or safety valve," counsel stated that he had discussed that option with Movant, but Movant "declined and maintains his innocence." 9/5/2018 Sent. Hrg. Tr., D.E. 130 at 14:8-14. Counsel reiterated that Movant "still maintains his innocence, and we've had very long conversations concerning all the adjustment[s] and all the good things that could happen to him at sentencing, but at the end of the day, [Movant] stands by his word that he is innocent." *Id.* at 61:23–62:2. Counsel also addressed using Movant's wife "untold times" to explain to Movant the calculations involved at sentencing. *Id.* at 63:9-14. Movant never contested these statements by counsel, nor did he state that he did not understand the proceedings or that he would have pled guilty or accepted responsibility in exchange for a lower sentence.

Because Movant's conclusory allegations that counsel provided erroneous advice regarding Movant's sentencing exposure are not corroborated and are inconsistent with the record, his claim in Ground One is denied.

### 2. Counsels' Cumulative Errors

Ground Two alleges ineffective assistance of counsel due to "both the individual and cumulative impact of multiple deficiencies or errors by counsel(s) during the pretrial, trial, sentencing and direct appeal process." D.E. 141, p. 5. Specifically, trial counsel "failed to aggressively challenge the testimony of the codefendants"—who sought to mitigate damages to themselves—which resulted in Movant's enhanced sentence based on "the attribution of all drugs involved in the conspiracy and the leadership role." *Id.*

As an initial matter, Movant was not given a sentencing enhancement based on leadership role. Moreover, the drug quantity used to determine his offense level was not based on the

testimony of Movant's codefendants, but rather on his own admission "to packaging between 750,000 and 2,000,000 grams of synthetic cannabinoid, which exceeds the minimum weight for a base offense level of 38." *Moton*, 951 F.3d at 645. Finally, Movant does not offer any specific factual allegations regarding appellate counsel's alleged deficiencies. *See Pineda*, 988 F.2d at 23; *Miller*, 200 F.3d at 282.

Accordingly, Movant's claims in Ground Two regarding counsels' cumulative errors are denied.

### 3. Counsel's Failure to Investigate and Present Mitigating Factors

Ground Four alleges that trial counsel was ineffective at sentencing because he "failed to investigate many factors surrounding the case, and also failed to present mitigating factors, especially Movant's . . . misunderstanding of the laws and why he continued to assert factual innocence." D.E.141, p. 8. Specifically, counsel failed to "present Movant as a new immigrant lacking in knowledge which allowed him to fall into the trap of believing he was working a legitimate employment, that he was duped and how he came to be viewed in [a] leadership role in the case in chief." *Id.* As a result, Movant received a harsher sentence than his codefendants, "who were actually savvy in the drug business and wise enough to be used against him." *Id.*

Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [proceeding]." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)). *See also United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014).

Here, Movant fails to allege with specificity what any additional investigation would have revealed and how it would have altered the outcome of his sentencing. His conclusory

allegations are also contradicted by the record, which reflects that defense counsel lodged written objections to the PSR re-urging Movant's innocence and arguing that Movant "did not knowingly package any illegal substance" and "had no knowledge that any substances were illegal." D.E. 92, ¶¶ 4, 7. Counsel further argued at sentencing that Movant "maintains his innocence that he knowingly was dealing with any type of illegal substance. . . . So that's why he—we object to [the] enhancement concerning maintaining an illegal premises. He did not know it was illegal, and he maintains his innocence concerning that knowledge." Sent. Tr. at 12:24–13:6. The Court, however, found that defense counsel's objections amounted to a "simple disagreement with the facts that were presented [at trial]" and that the jury's guilty verdict required that the objections be overruled. *Id.* at 12:6-9, 13:16-17.

Counsel nonetheless argued for a 120-month sentence, citing Movant's lack of a criminal history, his status as an Indian immigrant and impending deportation, his strong family ties, and his cooperation with investigators following his arrest. He explained that "Movant was a little bit lost," "doesn't speak English very well," and was "taken advantage [of] by the unindicted codefendant in this case, who [] skipped the country back to Pakistan or something." Sent. Tr. at 62:11-13, 63:5-6.  "What we have here is an individual from another country, different culture, who wasn't here for a long time who had gotten mixed up in a very bad thing." *Id.* at 63:15-17. The Court ultimately granted a downward variance and sentenced Movant to 186 months' imprisonment, more than four years below his advisory Guideline sentence of 240 months.

Because Movant's conclusory allegations that counsel was ineffective at sentencing are inconsistent with the record, his claim in Ground Four is denied.

9

**B.  Court's Failure to Meaningfully Consider the § 3553(a) Factors**

Finally, Ground Three alleges that the Court failed to meaningfully consider all the 18 U.S.C. § 3553(a) factors at sentencing. Movant also complains that his sentence was "disparate" as compared to his codefendants.

"A motion under § 2255 is not the place to complain of a sentencing disparity." *Habib-Rodriguez v. United States*, 2008 WL 2225673, at *1 (S.D. Tex. 2008) (citing *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995)). Moreover, because this claim could have been raised on direct appeal but was not, the issue is procedurally defaulted. *See United States v. Hampton*, 99 F.3d 1135, at *2 (5th Cir. 1996) (unpublished) (affirming dismissal of sentencing disparity claim as procedurally defaulted). Movant can only obtain relief under § 2255 if he can show cause for his failure to raise the issue on direct appeal and "actual prejudice" resulting from the error, which he has not done. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). ("[R]eview of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."); Movant's claim regarding the Court's failure to meaningfully consider the § 3553(a) factors at sentencing is similarly defaulted for failure to raise this issue on appeal.

Accordingly, Movant's claims in Ground Three are denied.

**V. CERTIFICATE OF APPEALABILITY**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct

this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

11

## VI. CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment (D.E. 152) is **GRANTED**; Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 141) is **DENIED**; and Movant is **DENIED** a Certificate of Appealability.

It is so **ORDERED** this 4th day of January, 2022.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE